MUTUAL LIFE INSURANCE COMPANY

*v.*

GABRIEL SCHWAB et al.

*Rev.* "*Chancery*" § *41*, which provides that "where, after the filing of the bill, any person acquires such an interest in the subject-matter of the suit as would have made him a proper or necessary party if such interest had been possessed by him at the commencement of the suit, it shall not be necessary to file a supplementary bill to make such person a party, but the same may be done by petition filed in the cause," does not allow one who, pending a fore-closure suit, has acquired a contested claim to part of the surplus paid into court on the foreclosure sale, after satisfying the complainant's mortgage, to be made a party to the suit by petition, after final decree, for the purpose of enforcing such claim.

On petition to be made a party to the suit.

*Mr. Edward A. Day*, for the petitioner.

*Mr. Edward Q. Keasbey*, contra.

GREEN, V. C.

This is a petition by J. Montgomery Hare to be admitted as a party complainant in this suit, instead of the present complainant, or that he may be made a defendant therein, and that an order may be made in the cause requiring the clerk of this court to pay over to him the fund now in this court, and for such other or further relief as the circumstances of the case may require.

The bill of complaint in this cause was filed to foreclose a mortgage made by Riley and Osbourne to the complainant on certain property in Newark, to secure the payment of $40,000, the said mortgage containing the usual insurance clause.

A final decree was entered on or about January 27th, 1892, in which it was adjudged that there was due to the complainant the sum of $44,672.74, principal and interest and taxes; to

John H. Kase, a defendant and second mortgagee, $8,590; to Albert O. Headley, another defendant, on a judgment and mechanics' lien, $4,199.27; to Lewis F. Demarick, trustee $57,573.60; and that the whole of the premises should be sold to satisfy the amount due to the complainant and defendants respectively, and that a *fieri facias* should issue for that purpose.

The petition alleges that at the time of the pendency of the suit, there were in the hands of the complainant, as collateral to its mortgage debt, certain policies, being six in number, and aggregating $30,000, insuring the mortgaged premises against loss by fire; which policies were issued on or about February 28th, 1891, to G. Schwab & Bros., and severally contained an endorsement to the effect that the "Loss, if any, should be payable to the complainant as mortgagee." The petition further alleges that independent of the said policies of insurance and the contracts and agreements therein contained, each of the said fire insurance companies had, prior to the time when said policies were issued, made and entered into an independent contract or agreement with the said Mutual Life Insurance Company, in and by which it did agree that all the policies of fire insurance issued by it which were or might be assigned or held by the said Mutual Life Insurance Company, should have written upon, attached or appended thereto the following clause, which it was thereby agreed was necessary to clearly express all the facts and conditions of insurance on each particular risk covered by said policies of insurance respectively, the said clause being as follows:

"Loss or damage, if any, under this policy, shall be payable to the Mutual Life Insurance Company of New York, as mortgagee, as interest may appear, and the interest of the said mortgagee shall be considered absolutely insured, and subject to no plea in bar of its right to recover from this Company, under this policy, such sum or sums of money as shall save the said mortgagee from loss in consequence of any fire which might happen, except such loss as may take place by means of any invasion, insurrection, riot or civil commotion, or of any military or usurped power, and shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title, occupation or ownership of the property, nor

Mutual Life Insurance Co. v. Schwab.

by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium or premiums due under this policy, the mortgagee shall on demand pay the same,"

and in case of the omission of said clause from said policy, that the same should be deemed to be attached.

That the said agreement did further contain the following clause :

"Whenever this company shall pay the mortgagee any sum or loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option pay to the mortgagee the whole principal due or to grow due on the mortgage with interest; it shall thereupon receive a full assignment and transfer of the mortgage and of all such securities, but no subrogation shall impair the right of the mortgagee to recover the full amount of its claim."

The petition further states that the mortgage clause in the last-mentioned agreement was not attached to any of the said policies of insurance, but was omitted therefrom, and that said policies contained no other agreement with the complainant except the endorsement thereon as set forth, and shows and charges that this agreement made by each of the fire insurance companies with the Mutual Life Insurance Company, constituted an independent agreement or contract with the complainant and was independent of the several policies of insurance.

The petition further sets out that on November 28th, 1891, a fire occurred on the mortgaged premises, and on February 9th, 1892, the amount of the loss sustained by the said complainant by reason of the fire was submitted to appraisers, who, on March 9th, 1892, appraised the damage at $6,114.64; that in respect to G. Schwab & Bros., the persons directly insured, the policies had for various reasons been forfeited, and no liability existed as against the companies in their favor; that said fire insurance companies, on or about July 15th, 1892, paid to the complainant $6,114.64, the amount of the loss or damage awarded by the

appraisers; that in making this settlement the fire insurance companies respectively claim that as to the mortgagor or owner no liability upon the said policies or either of them existed, and the said companies, by virtue of the said independent contract with the said complainant to the extent of the payment of the loss so made, were subrogated to all the rights of the said complainant under all its securities held as collateral to the mortgage debt, and became part owners with the said Mutual Life Insurance Company in said decree and execution and all proceeds which might be derived therefrom; and that when they paid the said fire losses to the complainant, such payments were respectively made on the express understanding and arrangement that the fire insurance companies should be subrogated to all the rights of the said complainant in and to its said securities for its mortgage debt, after the complainant had received payment of its own debt.

The petition further states that, after the payment of the said losses to the complainant, on or about August 15th, 1892, each of the fire insurance companies assigned its claim to the petitioner; that after execution was issued upon the decree, the complainant made application to the court, and an order was made in the cause, allowing it the amount of sundry payments for insurance and interest, and directing the sheriff to raise such amount in addition to the amounts of its decree. This addition amounted to the sum of $223.25. The *fieri facias* was issued to the sheriff of Essex county on or about February 9th, 1892, and under and by virtue thereof the premises were, on August 23d, 1892, sold by the sheriff for the sum of $45,100, which sale was confirmed by the court and a deed thereof delivered by the sheriff; that the sheriff realized on the sale, on the 16th of September, when the transaction was closed, for principal and interest &c., $45,257.85; that on September 8th, 1892, Albert O. Headley, one of the defendants in the cause, filed a petition, as the assignee of the mortgage of John H. Kase, being the second mortgagee, claiming that he was entitled to receive the amount realized from the sale, over and above the amount due the complainant, after crediting it with the amount of the insur-

ance paid. On which petition an order was made that the sheriff pay into court the surplus money over and above the amount decreed to be due the complainant, with interest, costs and sheriff's fees, and the amount ordered to be paid to the complainant by the order subsequent to the decree, after deducting therefrom the sum of $6,114.64 received on the fire insurance policies.

That there was due to the complainant on the execution sale, after crediting the amount received from the fire insurance, the sum of $41,458.93; that the sheriff's fees were $314.90, and that the sheriff paid into court $3,484.02, in pursuance of the order.

That if the decree had been fully executed, there would have been due to the complainant, upon its decree for principal, interest and costs of sheriff's fees, $47,900 or thereabouts, so that the amount realized on the sale was not sufficient to have paid complainant's decree.

The petitioner claims that, by virtue of the contracts of the complainant with the fire insurance companies, and the payment of the fire losses thereunder, and the agreement made at the time of the payment of the said fire losses to the complainant and the assignments to him, he, the petitioner, is entitled to the amount realized on the sale over and above the amount due to the complainant after crediting it with the amount realized on the fire losses, and that he is entitled to the whole fund now in court in this cause.

The petition states that Albert O. Headley, as the assignee of the Kase mortgage, claims to be entitled to the fund, on the ground that the complainant's mortgage was, *pro tanto*, paid by the insurance moneys, which claim the petitioner contests, on the ground that he is entitled, by his right of subrogation, to those moneys; and, further, that the interest of Kase or Headley, as mortgagee, was separately insured, and that the latter held policies of fire insurance as collateral to his mortgage, to the full amount due thereon; and, further, that either the petitioner or fire insurance companies are proper parties to the suit.

This application is under the forty-first section of the Chancery act (*Rev. p. 110*), as follows:

"That where, after the filing of the bill, any person shall acquire such an interest in the subject-matter of the suit as would have made him a proper or necessary party, if such interest had been possessed by him at the time of the commencement of the suit, it shall not be necessary to file a supplementary bill to make such person a party, but the same may be done by petition filed in the cause."

The sole question is whether the petitioner can litigate his claim to the fund in court in this cause under this section, or whether he must not proceed by original bill, or an original bill in the nature of a supplemental bill.

The bill in this cause was filed simply to foreclose a mortgage; its end and aim were to procure a decree to foreclose all the outstanding claims against the property, and by its sale to have the debt due the complainant liquidated.

The petitioner claims that by virtue of an independent agreement, made between the assignors, the fire insurance companies and the complainant, by which the latter agreed to subrogate the said companies as to all securities in its hands, if the insurance companies should be called upon to pay any losses occasioned by fire on the premises insured by them, he, as assignee of said companies, is entitled to the fund in court, as representing an amount raised at the sale and due the complainant on its mortgage, and which would have been so paid to it but for the prior payment by the fire insurance companies of the amount, under their agreement. This raises a contest between the petitioner and subsequent encumbrancers, notably the second mortgagee. Can it be litigated on a petition? In the case of *Hewitt* v. *Montclair Ry. Co., 10 C. E. Gr. 100*, relied on by counsel, the petitioner had purchased the property, subject to all prior liens and encumbrances, at a sale made under the order of the court, under the act to prevent frauds by incorporated companies. That sale took place after two suits had been instituted for the foreclosure and sale of the premises under mortgages, one on the first and the other on the second mortgage. In the suit on the second mortgage a final decree had been entered and execution had been

issued thereon and the mortgaged premises advertised for sale. The suit on the first mortgage had proceeded to an interlocutory decree *pro confesso* with the usual order of reference. The petitioner asked to be admitted as a defendant in both suits, to the end that he might have the opportunity of contesting the complainant's claim. The chancellor denied his motion as to the suit on the second mortgage, because, by the final decree in that suit the railway company and all persons claiming and to claim under them, were foreclosed of all equity of redemption and claim in and to the mortgaged premises, or to so much thereof as should be sold under the decree, and the petitioner was bound by that decree. He, however, admitted him as a party defendant in the suit on the first mortgage, stating, however, that he was bound by all proceedings in the suit up to the time when he acquired his title, and he could not, therefore, permit him to answer, allowing him, however, to be present at the taking of the account, and to avail himself of all defences of which the company could avail themselves, after interlocutory decree *pro confesso* against them and order of reference.

This case, however, is not an authority in favor of this application, for it will be seen that the petitioner sought to contest the complainant's claim, and his contention, if his application had been timely, was one which directly involved the complainant's right to recover in whole or in part, and came within the matters in controversy in the suit.

*Conrad* v. *Mullison, 9 C. E. Gr. 65,* the other case relied on by petitioner's counsel, was one in which a bill was filed for the foreclosure and sale of certain mortgaged premises. The bill alleged that there was a prior mortgage and treated the same as a valid encumbrance. The bill having been taken as confessed, there was an order of reference. The master reported that the first mortgage had been paid off and that the second was the only encumbrance, reporting the amount due thereon. The final decree was entered adjudging accordingly. Petition was then filed by one Osborn Conrad, who had been a prior owner of the property, and who had given the first mortgage. The petition stated that by an agreement between petitioner and Henry Conrad,

evidenced by a sealed instrument, and signed by Henry Conrad, then the owner of the first mortgage, for sufficient consideration .Henry agreed with him, Conrad, that he would look entirely to the mortgage on the farm for the payment of $4,000, and interest thereon, secured by that mortgage, and hold the bond and its accompanying warrant of attorney to confess judgment upon it, as evidence of the debt only, and not to be used otherwise than with the mortgage; that, afterwards, and in or about March, 1868, Henry Conrad, in violation of his agreement, entered .judgment on the bond, and, by means of an execution, compelled the petitioner to pay the debt, which he did, claiming that, under the circumstances, he was entitled to be subrogated to all the rights of Henry Conrad to and under the bond and mortgage, which he held uncanceled, they having been delivered to him, the petitioner, by the attorney of Henry Conrad at the time of his paying off the judgment, and the chancellor permitted him to set up and establish his claim; but in this case it will be noted that the mortgage which was here sought to be set up was treated by the bill as a valid encumbrance, and that its retirement was solely on the report of the master, and the equity was entirely within the contemplation of the bill originally filed.

The petitioner's claim is in no wise within the issues of this cause, and whether it is one which he is entitled to have allowed as against the subsequent encumbrancer, is contested, and one to be litigated, and is not free from doubt.

The fund involved represents the depreciation, by the fire, of the mortgaged premises, and presumably a decreased price at .the sheriff's sale. The fire, to the extent of the damage, lessened the security of the second mortgage. The complainant was indemnified by the insurance against this loss. In equity the second mortgagee could force the first mortgagee to resort to its indemnity. Can he be practically deprived of that right by an independent agreement, made by the first mortgagee with the indemnitor for subrogation? This is but one question of several which might be suggested, which the other claimants to this fund have a right to have settled authoritatively by proceedings which

would bring them up regularly for adjudication. They have also a right to question the title under which the petitioner claims. How are these questions to be settled on this petition?

The bill is simply one of foreclosure. The defendants, desiring so to do, filed their answers; a decree of foreclosure and sale has been entered, a sale has taken place, and the complainant has been paid all that is due to it on its mortgage. Its interest in the suit is completely at an end; its right to relief has been extinguished. If petitioner is admitted as a party complainant, how can he, on this bill, and on the issues formed by the pleadings, raise the question of his right to subrogation, and how can relief be granted therein?

If he is to be admitted as a party defendant, he comes in under the statute, which declares that he shall be bound by all orders and proceedings in the cause against the party whose interest he has acquired; and further, that if an interlocutory or final decree has been entered in the cause, it shall not be opened or set aside.

This statutory proceeding certainly does not contemplate the admission of a party as a complainant, whose rights cannot be properly adjudicated as part of the relief prayed for in the original bill; nor as a party defendant, when the right which he seeks to set up is one which requires that he should, either by answer by way of cross-bill, or by answer and cross-bill, place himself in a position where he can be entitled to the relief asked for. Its design is to provide an easy and inexpensive method by which a person, who succeeds to or acquires, *pendente lite*, an interest in the subject-matter of a suit, may take the place of his predecessor, under the issues existing in the suit, and just in the state or condition in which those issues are when he comes in, but it is not its design to give him the right to raise new and different issues from those existing at the time he comes in. If his interest requires, or he wants to do that, he must proceed by an original bill, or an original bill in the nature of a supplemental bill; the simple remedy of application by petition under the statute is not available for that purpose.

The application must be denied, with costs.